UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY S.[1] Plaintiff, v. FRANK BISIGNANO Commissioner of Social Security, Defendant. | ) ) ) ) ) ) ) ) ) ) | No. 1:25-cv-01625-JPH-MKK |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Anthony S. seeks judicial review of the Social Security Administration's decision denying his petition for Supplemental Security Income. He argues that the Administrative Law Judge erred when determining his Residual Functional Capacity ("RFC") by failing to properly address his subjective symptoms and by failing to recontact the consultative examiner after considering the examiner's report. Dkt. 12 at 1. For the reasons below, the ALJ's decision is **AFFIRMED**.

## I.
## Facts and Background

Plaintiff was 51 years old as of the application date. Dkt. 10-5 at 2. He completed high school and has past work experience as a city worker and seasonal pool attendant. Dkt. 10-6 at 6–7. He alleges problems with

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

hypertension, cardiomyopathy, ventricular tachycardia, congestive heart failure, liver failure, and edema. Dkt. 10-7 at 302, 486.

Plaintiff applied for Supplemental Security Income on December 21, 2022, alleging an onset date of January 1, 2020. Dkt. 10-2 at 18. The Social Security Administration ("SSA") denied his application at the initial and reconsideration stages. *Id.* Plaintiff later amended his application to allege an onset date of December 21, 2022. *Id.*

The Administrative Law Judge ("ALJ") held a hearing in June 2024, and later denied Plaintiff's application for benefits. *Id.* at 18, 32. In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 416.920(a) and concluded that Plaintiff was not disabled. Dkt. 10-2 at 20–32. Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id.* at 20.

- At Step Two, Plaintiff had "the following severe impairments: systolic and diastolic heart failure with nonsustained ventricular tachycardia; cardiomegaly; tortuous thoracic aorta; hypertension; and a history of gunshot wounds with removal of the left kidney, and partial lung and partial small bowel resection." *Id.*

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 21.

- After Step Three but before Step Four, Plaintiff had the RFC "to perform a range of light work . . . defined as follows: sitting six hours during an eight-hour workday; standing and walking four hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs; stooping, kneeling, and crouching; no crawling; no climbing ladders, ropes, or scaffolds; no work around dangerous moving machinery or at unprotected heights; no exposure to extreme heat or to

> extreme cold; and occasional exposure to humidity, as well as to atmospheric conditions as defined in the *Selected Characteristics of Occupations*." *Id.* at 23.

- At Step Four, Plaintiff had "no past relevant work." *Id.* at 31.
- At Step Five, considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy" that he can perform. *Id.*

The Appeals Council denied review in June 2025. Dkt. 10-2 at 2.

Plaintiff brought this action for the Court to review the denial of benefits under 42 U.S.C. § 405(g). Dkt. 1.

## II.
## Applicable Law

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019). When an applicant seeks judicial review of a benefits denial, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform h[is] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (discussing parallel provision). "If a claimant satisfies steps one, two, and three, []he will

automatically be found disabled. If a claimant satisfies steps one and two, but not three, then []he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). After step three, but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g).

The Court will affirm the benefit denial if the ALJ committed no legal error and substantial evidence supports the ALJ's decision. *Stephens*, 888 F.3d at 327. "Substantial evidence is relevant evidence that a reasonable mind could accept as adequate to support a conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). When an ALJ's decision does not apply the correct legal standard or is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

## III.
## Analysis

Plaintiff argues that the ALJ erred by: (1) insufficiently addressing his subjective symptoms and (2) failing to recontact the consultative examiner after considering the examiner's report. Dkt. 12 at 1.

**A. Subjective Symptom Analysis**

"When evaluating credibility, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements." *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). "ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). A reviewing court "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is 'patently wrong,' which means that the decision lacks any explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024).

Plaintiff argues that the ALJ erred by using his successful completion of daily activities to discredit his subjective statements about his edema and need to elevate his legs "for multiple hours two to three times per week." Dkt. 12 at 7–9. The Commissioner responds that the ALJ adequately described Plaintiff's activities and compared them to his alleged limitations. Dkt. 13 at 10–11.

"Daily activities may be used to discredit a claimant's testimony." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th. Cir. 2017). An ALJ may not, however, place "undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008). An ALJ must "recognize the difference between performing activities of daily living with flexibility (and often help from family and friends) and performing to the standards required by an employer." *Childress v. Colvin*, 845 F.3d 789, 792 (7th Cir. 2017).

Here, the ALJ noted that Plaintiff needed breaks during daily activities such as standing, climbing stairs, taking out the trash, and mowing the grass. Dkt. 10-2 at 25–26. He then stated that "claimant's daily activities and the evidence as a whole demonstrate [that Plaintiff's] limitations are less severe than he alleges. . . . [His] daily activities are consistent with the ability to perform work according to the range of light work detailed above; however, this is only one factor I consider." *Id.* at 26. So, rather than ignoring evidence that Plaintiff needed flexibility, the ALJ acknowledged Plaintiff's testimony concerning how he "copes with his daily activities." *Craft*, 539 F.3d at 680; *see* dkt. 10-2 at 25. It was therefore permissible for the ALJ to determine that Plaintiff's "statements are inconsistent with his levels of daily living," dkt. 10-2 at 29, when assessing his credibility. *See Childress*, 845 F.3d at 792; *see Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) ("[T]here is not an absolute prohibition against this comparison.").

Moreover, the ALJ did not consider Plaintiff's daily activities "conclusive proof" of his ability to work full-time. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (ALJ did not err by "consider[ing] Loveless's description of his daily activities in assessing whether his testimony about the effects of his impairments was credible or exaggerated" because the ALJ did not use those daily activities as "conclusive proof" of ability to work). The ALJ instead explicitly acknowledged that those activities were just "one factor" weighing against Plaintiff's account of disabling edema. Dkt. 10-2 at 26. He then analyzed other evidence, including Plaintiff's medical history, primary care

treatment notes, and medications to conclude that his subjective symptoms were somewhat inconsistent with the evidence. *See* dkt. 10-2 at 26–29; *Pufahl v. Bisignano*, 142 F.4th 446, 459 (7th Cir. 2025) ("[A]s he was permitted to do, the ALJ considered [claimant's] daily activities as a factor alongside numerous other considerations in evaluating her subjective statements."). And the ALJ specifically considered Plaintiff's history of lower extremity edema, but noted that Plaintiff "testified that his feet and legs do not swell as large as previously in 2021, and . . . that he takes a diuretic that helps." Dkt. 10-2 at 25–27, 31.

The ALJ thus rooted his conclusions in evidence beyond daily activities, finding that Plaintiff's subjective statements were "somewhat inconsistent" with that evidence. *Id.* at 29. That cited evidence provides specific reasons supporting the ALJ's conclusion that the evidence did not support a need for Plaintiff "to elevate his legs during the workday, or [be] limited to sedentary work." *Id.* at 29, 31, The ALJ's credibility determination therefore is not "patently wrong" and provides no basis for remand. *See Pufahl*, 142 F.4th at 458.

**B. Consultative Examiner's Report**

In determining Plaintiff's RFC, the ALJ evaluated Dr. Mohammed Majid's consultative examination, which addressed medical test results, identified diagnoses, and summarized findings such as high blood pressure and a straight leg raise test to 75°. Dkt. 10-7 at 485–86. The ALJ found the report "somewhat persuasive in finding limitation to light work with reduced standing and walking." Dkt. 10-2 at 30. Plaintiff argues that the ALJ erred because he

"did not fulfill his regulatory duty to recontact Dr. Majid—the agency's consulting examiner—upon finding the doctor's report inadequate." Dkt. 12 at 10–11. The Commissioner responds that the ALJ never found the case record or report insufficient and any omissions from Mr. Majid's report are not required by the regulation. Dkt. 13 at 13.

A consultative examination report "must be complete enough to help [the ALJ] determine the nature, severity, and duration of the impairment, and residual functional capacity." 20 C.F.R. § 404.1519n(b); *see also* 20 C.F.R. § 416.920b(b) ("We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision."). A consultative examination "should" include major complaints, history of major complaints, positive and negative findings, test results, diagnosis and prognosis, and a medical opinion. 20 C.F.R. § 416.919n(c). But "the absence of a medical opinion in a consultative examination will not make the report incomplete," and an ALJ "may not require a report containing all of the elements" when the "evidence . . . does not require a complete consultative examination." 20 C.F.R. § 416.919n(c)–(d). If an ALJ determines that a "report is inadequate or incomplete," he "will contact the medical source who performed the consultative examination." 20 C.F.R. § 404.1519p(b); *see also* *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004).

Here, the ALJ did not find Dr. Majid's report "inadequate or incomplete" under 20 C.F.R. § 404.1519p(b). *See* dkt. 10-2 at 29–30. Rather, the ALJ evaluated the report and found it only "somewhat persuasive" because Dr.

Majid's findings were mostly consistent with Plaintiff's treatment records and were not inconsistent with state agency consultants' findings. *Id.* While the ALJ noted that Dr. Majid "did not offer a specific opinion as to the claimant's functioning," the ALJ did not find that Dr. Majid's report was inadequate for that reason. *Id.*; *see* 20 C.F.R. § 416.919n(c). Dr. Majid's report instead provided "an adequate basis for decisionmaking" about Plaintiff's improved heart condition, blood flow, and leg edema, as well as his elevated blood pressure, negative leg raise test, and gunshot injury history. 20 C.F.R. § 416.919p. Indeed, the ALJ extensively discussed Dr. Majid's findings in limiting Plaintiff to "light work." Dkt. 10-2 at 29–30.

Plaintiff nevertheless relies on *Cieszynski v. Kijakazi*, but there the ALJ stated that "the opinion was not specific enough and [was] inadequately supported." 2023 WL 2523499, at *3, *5 (7th Cir. Mar. 15, 2023). Here, the ALJ made no similar finding and the report was "complete enough" to help him determine Plaintiff's RFC limitations, so the ALJ was not required to recontact Dr. Majid. Dkt. 10-2 at 29–31; *cf. Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (holding that "the evidence was adequate for the ALJ to find [claimant] not disabled," so "the ALJ acted within his discretion in deciding not to call a medical expert").

Finally, Plaintiff argues that the ALJ gave Dr. Majid's report "little weight" without adequate explanation. Dkt. 12 at 11. But an ALJ may discount a "medical opinion as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Baptist v. Kijakazi*, 74 F.4th 437, 445 (7th

Cir. 2023); *see* 20 C.F.R. § 416.920c.[2] As explained above, the ALJ found Dr. Majid's report "somewhat persuasive," in part because it was mostly consistent with Plaintiff's treatment records and was not inconsistent with state agency consultants' findings. Dkt. 10-2 at 29–30. That is enough articulation to support the ALJ's decision to find Dr. Majid's opinion "somewhat persuasive." *See Baptist*, 74 F.4th at 445; dkt. 10-2 at 30. Because the ALJ built a "logical bridge from the evidence to his conclusion," remand is not required. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

## IV.
## Conclusion

The Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 8/20/2026

James Patrick Hanlon
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

[2] Plaintiff cites 20 C.F.R. § 416.927(c)(1) for the assertion that "[t]he opinions of examining physicians are generally entitled to more weight than those of non-examining medical professionals." Dkt. 12 at 11. That regulation, however, applies only to claims filed before March 27, 2017. *See* 20 C.F.R. § 416.927(c)(1); *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, at *5853 (S.S.A. Jan. 18, 2017) ("[O]ur current rules do not create an automatic hierarchy for treating sources, examining sources, then nonexamining sources to which we must mechanically adhere.").